IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

STEVEN GARCIA,

       Plaintiff,

vs.                                                No. CIV 05-0914 DJS/LCS

JOINER CONSTRUCTION COMPANY,
INC. a New Mexico Corporation,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

       **THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment **[Doc. No. 29]**, filed June 30, 2006, and fully briefed on August 7, 2006. Plaintiff filed this action pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213, and the New Mexico Human Rights Act, N.M.Stat.Ann. §§28-1-1 to -15, alleging Defendant wrongfully terminated and discriminated against him on the basis of his disability. As grounds for its motion, Defendant contends (1) Plaintiff cannot show his physical impairment substantially limited a major life activity; (2) Plaintiff was not qualified to perform the essential functions of his position; (3) Plaintiff cannot show Defendant failed to accommodate his alleged disability; and (4) Plaintiff cannot show Defendant terminated him because of his alleged disability. Having reviewed the motion, the memoranda in support and in opposition, the applicable law and being otherwise fully informed, the Court finds that the motion is not well taken and will be DENIED.

**I.  Standard of Review**

The Court will grant summary judgment when there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The movant carries the burden of establishing there are no genuine issues of material fact, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970), but may discharge its burden by showing there is an absence of evidence to support the non-movant's case, *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant meets its burden, the burden shifts to the non-movant to demonstrate a genuine issue for trial on a material matter. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). In making its summary judgment determination, the court looks at the pleadings and documentary evidence in the light most favorable to the non-movant, *Deepwater Invs., v. Jackson Hole Ski Corp.* 938 F.2d 1105, 1110 (10th Cir. 1991), and the movant must show beyond a reasonable doubt it is entitled to summary judgment, *Hicks v. City of Watonga, Okla.*, 942 F.2d 737, 743 (10th Cir. 1991). However, once the burden shifts to the non-movant, that party may not rest on its pleadings but must set forth specific facts showing there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof. *Celotex Corp.*, 477 U.S. at 324. However, "the mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). If the non-movant cannot make such a showing, after adequate time for discovery, summary judgment is mandated. *Celotex Corp.*, 477 U.S. at 322. The Court will consider Defendant's motion for summary judgment in light of these standards.

## II.  Factual Background

Defendant employed Plaintiff as a raker on a road paving crew on May 1, 2002. Defendant promoted Plaintiff to a screed driver sometime in November 2002.  However, Plaintiff claims he never received the pay increase that went along with his new position.  Plaintiff worked for Defendant from May 1, 2002 through May 14, 2003.  Several months before Plaintiff's physician diagnosed him with colon cancer, Plaintiff was suffering from severe chronic abdominal pain.  On **November 4, 2002**, Plaintiff reported severe abdominal pain for six months to his physician.  Pl.'s Resp. in Opp'n to Def.'s Mot. for S.J., Ex. 6 ("stomach cramps x 6 mos– last night couldn't sleep secondary to pain").  On **December 4, 2002**, Plaintiff was again seen by his physician for heartburn and "lots of pain inside." *Id*.  On this visit, Plaintiff's physician prescribed Lortab, a narcotic analgesic, for control of his pain.  *Id.*  On **December 16, 2002**, Plaintiff returned to his physician for a follow up of his "stomach pain." *Id.*  The physician noted Plaintiff had mild distention of the abdomen and increased bowel sounds and directed Plaintiff to stop all dairy for weeks.  On **January 22, 2003**, Plaintiff returned to his physician and complained that he was "still having stomach problems." *Id.*  Plaintiff reported no relief from his pain on a dairy free diet.  Plaintiff also reported having pain all night and sleeping sitting up.  Plaintiff's physician questioned whether Plaintiff was suffering from Chrohn's Disease, a chronic inflammation of the colon.

During this time period, prior to Plaintiff's physician diagnosing him with colon cancer, Plaintiff contends he continued to work despite his chronic pain, fatigue and weakness.  Plaintiff also contends Defendant and its supervisors knew of his medical condition and accommodated him (1) by allowing him frequent breaks when his pain was too severe; (2) by allowing him to take

3

time off to visit his doctors for medical attention; and (3) by not assigning him heavy labor duties like shoveling asphalt when he was feeling faint.

On **February 3, 2003**, Plaintiff collapsed and fainted at work. A co-worker took Plaintiff to the emergency room at the West Mesa Medical Center. Pl.'s Resp. in Opp'n to Def.'s Mot. for S. J., Ex. 7. On this day, the attending physician at West Medical Center provided Plaintiff with a note for his employer. The note stated: "This gentleman has been evaluated in the ER & needs to stay home from work for the next 3 days bec[ause] of his illness." *Id.* Plaintiff returned to work and continued to work for Defendant. Plaintiff provided notes from his physician(s) on the days he had to miss due to medical reasons. *Id.*, Ex. 8 (**February 12, 2003** note from Vijay P. Agarwal, M.D., stating: "Mr. Garcia was seen in my office today for evaluation of abdominal pain."); Ex. 9 (**February 17, 2003** note from Dr. Agarwal, stating: "To excuse Mr. Garcia from any work today and **2-17-03** and tomorrow **2-18-03**. Rest only–"); Ex. 10 (**February 24, 2003** note from Anurag Soni, M.D., stating: "To whom it may concern Mr. Steven Garcia has severe abdominal pain and is under care for w/u of abdominal pain. He may be given time off work for 48 hrs (2 days). Call me as needed w/questions."); Ex. 11 (**February 25, 2003** CERTIFICATE TO RETURN TO SCHOOL/WORK from health care provider at Presbyterian Medical Services, stating: Steven Garcia has been under my care from 2/11/03 to present and is able to return to work on 3/07/03 (with no limitations noted).").

Plaintiff contends he worked on **March 2, 2003**. Pl.'s Resp. in Opp'n to Def.'s Mot. for S.J.; Ex. 1, Garcia Aff. ¶ 7. On that day, Plaintiff informed Defendant that he had to go to the hospital for a barium contrast procedure the following day, **March 3, 2003**, at 9:00 a.m. and requested the day off. *Id.* ¶¶ 7 & 8. On **March 3, 2003**, Plaintiff notified Defendant that after his

4

tests the physician hospitalized him and did not allow him to leave. *Id.* ¶9. Darwin Rascon, Plaintiff's supervisor, visited Plaintiff at the hospital on **March 3, 2003**, and informed him that Defendant knew Plaintiff was on medical leave and that his job was secure until he got better. *Id.* On **March 6, 2003**, Plaintiff was admitted to the hospital. On **March 10, 2003**, Plaintiff underwent a small bowel resection operation to remove an abdominal mass. Plaintiff was released from the hospital on **March 19, 2003**.

    Sometime in late March, Joseph P. Lopez, M.D., Plaintiff's physician, completed Part B of the AFLAC Claim Form for Continuing Disability and indicated Plaintiff was "released to return to work" and also noted Plaintiff "may return to work on **May 15, 2003**." Pl.'s Resp. in Opp'n to Def.'s Mot. for S.J.; Ex. 2. Dr. Lopez noted he last treated Plaintiff on **March 28, 2003**, and listed "colon cancer" as the diagnosis. *Id.* Dr. Lopez did not list any work restrictions. *Id.* Melvonna Joiner, Defendant's Vice President completed Part C of the same form on **April 4, 2003**. *Id.* Ms. Joiner noted Plaintiff was no longer employed and indicated **February 14, 2003** as the "date of termination." *Id.* Since this form was faxed directly to AFLAC, Plaintiff was not aware Defendant had terminated him until **May 12, 2003**, when Plaintiff contacted Defendant and informed Defendant he was ready to return to work on **May 15, 2003**. *Id.*; Ex. 1. At that time, Defendant informed Plaintiff he had been terminated. *Id.* On **May 13, 2003**, Ms. Joiner wrote a "To Whom It May Concern" letter, stating: "Steve Garcia was employed at Joiner Construction from May 1, 2002 to February 14, 2003 and he is no longer employed here." *Id.*; Ex. 3. Subsequently, Plaintiff received a letter from Defendant stating he had been terminated as of February 14, 2003.

On **February 6, 2003**, Plaintiff filed a Supplemental Security Income (SSI) Application on the basis of disability. *Id.*; Ex. 4. The Social Security Administration tentatively approved Plaintiff's SSI Application and awarded Plaintiff $552.00 per month. The agency provided Plaintiff with the following relevant information:

> **Information About Your Payments**
> <u>We will be sending you a check for $552.00</u>. This money due you for July 2003.
> You should receive the check no later than July 4, 2003.
>
> The monthly payment amount is based on the information currently in our records. When a final decision is made about your disability, a final determination about your payment amount will be made.
>
> While we are making a final determination about whether you are disabled, we will send you payments for up to 6 months. If a determination is not made within the 6-month period, payments will be stopped. If you are found to be eligible to receive Supplemental Security Income payments, we will resume payments including any back payment due.
>
> **Your Payment Is Based On These Facts**
> You meet all the rules to be eligible for SSI beginning June 1, 2003. However, we cannot pay SSI until the month after you first meet the rules. Because of this, we will pay you SSI beginning July 2003.
>
> ** ** ** ** **
>
> <u>**You had monthly income of $944.18 for February 2003**</u>. This amount does not affect your Supplemental Security Income payment.
>
> **Things To Remember**
> This decision refers only to your claim for Supplemental Security Income payments. Any decision about your benefits under other Social Security programs will be sent to you in a separate letter.
>
> ** ** ** ** **
>
> Would you like to work? If so, you should know about special Supplemental Security Income (SSI) rules. These rules can help you keep Medicaid and may help you keep getting some SSI even though you are working. The enclosed fact sheet tells you more about special SSI rules for people who work.
>
> **SSI Rules That Help You Work**
> We want to tell you about some special Supplemental Security Income (SSI) rules that can help you while you are working or if you begin working. These rules can help you get or keep Medicaid and may help you keep getting some SSI even though you are working.
>
> **How your SSI May Change If You Work**

> If you work full-time or part-time and make $65 or less each month, your SSI will usually not change. As the money you earn from your job goes up, your SSI will go down. However, if you have no other income (money or support), you can earn up to $1,188.99 a month and still get at least $1 in SSI.
>
> **If You Stop Working or Start Earning Less**
> If you stop working or start earning less, please let us know right away. We can increase your SSI checks, or start your SSI and Medicaid again if they have stopped. You may not even have to file a new application.
>
> **If You Need Help Finding a Job**
> We can ask someone who offers vocational rehabilitation services to help you find a job or give you training.

Pl.'s Resp. in Opp'n to Def.'s Mot. for S.J.; Ex. 4.

On **September 7, 2004**, the Social Security Administration sent Plaintiff its "Notice of Award" and found Plaintiff disabled as of February 3, 2003. *Id.*; Ex. 5. The Social Security Administration also determined Plaintiff was entitled to monthly disability benefits beginning August 2003. *Id.* The Social Security Administration advised Plaintiff he would receive $660 on or about the third of each month in benefits. *Id.*

### III. Discussion

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §12112(a). A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. §12111(8). To establish a prima facie case under the Act, plaintiff must therefore demonstrate "(1) that he is 'disabled' within the

meaning of the ADA; (2) that he is qualified--with or without reasonable accommodation; and (3) that he was discriminated against because of his disability." *Siemon v. AT&T Corp.*, 117 F.3d 1173, 1175 (10th Cir.1997) (citing *White v. York Int'l Corp.*, 45 F.3d 357, 360-61 (10th Cir.1995)).

Defendant contends Plaintiff cannot establish a prima facie case of discrimination under the ADA for the following reasons: (1) Plaintiff cannot show he was disabled within the meaning of the ADA; (2) Plaintiff was not qualified, with or without reasonable accommodation, to perform the essential functions of his position; and (3) Plaintiff cannot show Defendant failed to accommodate his alleged disability.

## A.  Whether Plaintiff was Disabled under the Act

The ADA defines the term "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. §12102(2). The regulations implementing the ADA define the term "substantially limits" as: (i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. §1630.2(j)(1). Several factors are relevant to the determination of whether an impairment is substantially limiting, including: "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R.

§1630.2(j)(2). Whether an impairment "substantially limits" a major life activity depends on the individual and the impairment. Such determinations are not susceptible to per se rules; they "must be made on a case-by-case basis." *See* 29 C.F.R. pt. 1630 app., §1630.2(j) ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual."). The regulations and the EEOC's interpretive guidelines clearly state that an impairment need not be permanent in order to rise to the level of a disability. See 29 C.F.R. §1630.2(j)(2)(iii).

Plaintiff contends his disabling condition resulted from chronic pain, fatigue, and weakness secondary to colon cancer, he was qualified for his position, and that instead of continuing to accommodate him after his surgery, Defendant terminated his employment. Pl.'s Resp. in Opp'n to Def.'s Mot. for S.J. at 9. Plaintiff rejects Defendant's characterization of his impairment and contends his impairment limits more than the major life activity of working. Plaintiff asserts the chronic pain, fatigue and weakness secondary to the colon cancer impacted <u>every</u> aspect of his life including his ability to eat, sleep, walk, and work. *Id.* at 10-11.

Under the regulations, "major life activities" are those basic activities that the average person in the general population can perform with little or no difficulty, including caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, sitting, standing, lifting, reaching, and working. 29 C.F.R. §1630.2(i); 29 C.F.R. Pt. 1630, App., §1630.2(i). Under the regulations, cancer of the type at issue in this case is considered a physical impairment because it affects several body systems, significantly the digestive system. *See* 29 C.F.R. §1630.2(h)(1). Alternatively, even under Defendant's narrow view of Plaintiff's

impairment, the Court finds that Plaintiff has met his burden to show that his impairment substantially limits the major life activity of working.

A plaintiff who claims that he is disabled because a condition substantially limits his ability to engage in the "major life activity" of working must show that he is "significantly restricted in [his] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person with comparable training, skills and abilities." *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 371 (6th Cir. 1997) (quoting 29 C.F.R. §1630.2(j)(3)(i)). Plaintiff accordingly can survive summary judgment if he can demonstrate that he suffered from a physical impairment that substantially limited his ability to engage in the "major life activity" of working and that he was restricted in his ability to work in a "class of jobs" or a "broad range of jobs in various classes." *Id*. However, the "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. §1630.2(j)(3)(i).

In assessing whether Plaintiff's physical impairment substantially limited the major life activity of working, the regulations instruct the Court to also consider the following:

(ii)  In addition to the factors listed in paragraph (j)(2) of this section, the following factors may be considered in determining whether an individual is substantially limited in the major life activity of "working":
(A)  The geographical area to which the individual has reasonable access;
(B)  The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skill or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or
(C)  The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

20 C.F.R. §1630.2(j)((3)(ii).  The Appendix to Part 1630– Interpretive Guidance to Title I of the American with Disabilities Act provides the following example of an individual that is considered to be significantly restricted in the ability to perform a "class of jobs" when compared with the ability of the average person with comparable qualifications to perform those same jobs.

> For example, an individual who has a back condition that prevents the individual from performing any heavy labor job would be substantially limited in the major life activity of working because the individual's impairment eliminates his or her ability to perform a class of jobs.  This would be so even if the individual were able to perform jobs in another class, e.g., the class of semi-skilled jobs.

29 C.F.R. Pt. 1630, App., §1630.2(j).  Applying all these factors and under the example provided in the Appendix, the Court finds that Plaintiff has met his burden of showing he was restricted in his ability to work in a class of jobs.

### B.  Whether Plaintiff was Qualified to Perform the Essential Function of his Position

Under the second element of the ADA's prima facie case, the Court employs a two-part analysis to determine whether an individual is qualified:

> First, the Court determines whether the individual can perform the essential functions of the job.  Second, if (but only if) the court concludes that the individual is unable to perform the essential functions of the job, the court determines whether any reasonable accommodation by the employer would enable him to perform those functions.

*Davidson v. American Online, Inc.*, 337 F.3d 1179, 1190 (10th Cir. 2003)(internal citations omitted).  Defendant argues Plaintiff cannot perform the essential functions of a raker or a screed operator because the job is hot, dirty, and physically strenuous.  Moreover, Defendant claims "it is undisputed that Plaintiff could not perform these manual labor functions in April or May 2003 because he was not present to do so."  Def.'s Mem. in Supp. of Mot. for S.J. at 9.  Additionally, Defendant claims Plaintiff represented to the Social Security Administration that he was totally disabled and completely unable to work." *Id*. at 10.  According to Defendant, Plaintiff made this

11

representation "at the very same time" he claimed Defendant should have reinstated him to his position on the asphalt crew and cannot explain the contradiction. *Id.*   Therefore, Defendant contends it is entitled to summary judgment.

The Court will first address Defendant's last argument regarding Plaintiff's statements of total disability to the Social Security Administration. Under the holding in *Cleveland v. Policy Management Systems Corp.,* 526 U.S. 795 (1999), Plaintiff's representation of total disability to the Social Security Administration is not inconsistent with his ADA claim. In *Cleveland*, the Supreme Court held:

> When faced with a plaintiff's previous sworn statement asserting "total disability" or the like, the court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim. To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless "perform the essential functions" of her job, with or without "reasonable accommodation."

Id. at 807.  Plaintiff applied for and received Supplemental Security Income (SSI) starting in July 2003. Pl.'s Resp. to Def.'s Mot. for S.J., Ex. 4. The notice of benefits clearly states that special SSI rules allow Plaintiff to keep Medicaid and some SSI even though he is working. *Id.* at pg 8 ("If you work full-time or part-time and make $65 or less each month, your SSI will usually not change. As the money you earn from your job goes up, your SSI will go down."); *see also* Ex. 5, pg 3. In fact, Plaintiff could earn up to $1,188.99 without losing his entitlement to SSI. Plaintiff contends he applied for SSI when he was diagnosed with cancer because he questioned his ability to work. However, Plaintiff was well aware that if his SSI would end once he returned to full employment. Moreover, in his March 14, 2006 deposition, Plaintiff testified that he was still receiving disability benefits even though he was employed part-time. *See* Def.'s Mem. in Support

12

of Mot. for S.J.; Ex. B, Garcia Depo., pg 103, lines 16-25.  Based on these facts, the Court finds that Plaintiff explanation is sufficient to preclude summary judgment.

In response to Defendant's contention that Plaintiff cannot perform the essential functions of a raker or a screed operator, Plaintiff contends he was performing both jobs for nine months, with accommodation, prior to his cancer diagnosis.  Pl.'s Resp. in Opp'n to Def.'s Mot. for S.J. at 14.  Plaintiff stresses that as late as February 3, 2003, he performed the duties of a raker.  Plaintiff contends he was symptomatic (fatigue, pain, weakness, vomiting) many months prior to the diagnosis of cancer and was being treated with Percocet and Nexium, but Defendant "accommodated him, such that [he] worked until March 2, 2003." *Id.* at 12-14.  Based on all the evidence presented, the Court finds that there is a genuine issue of material fact as to whether Plaintiff could perform the essential functions of a raker or a screed operator such that summary judgment is precluded.

## C.  **Failure to Accommodate**

Finally, Defendant claims that "no reasonable accommodation could have allowed Plaintiff to perform the essential functions of a raker or a screed operator."  Def.'s Mot. for S.J. at 10.  First, Defendant contends he granted Plaintiff six weeks of leave to address his medical concerns, but Plaintiff never returned to work and also failed to discuss a date for his return to work.  Defendant argues that Plaintiff's failure to discuss a date for his return to work "should be construed as a request for an indefinite leave of absence." *Id.* at 11.  According to Defendant, such a request would not be "reasonable" under the ADA.

Plaintiff counters that his supervisor was aware of his condition and assured Plaintiff that his job was safe.  Moreover, the evidence indicates that Defendant terminated Plaintiff on

February 14, 2003.  This does not support Defendant's claim that he granted Plaintiff six weeks of medical leave, but Plaintiff never returned to work.  Moreover, as Plaintiff points out, "if Defendant Joiner knew that Mr. Garcia could not return to work until May 15, 2003, why was he terminated on February 14, 2003 when Mr. Garcia worked through March 2, 2003 and was listed as on medical leave by Defendant Joiner.  *See* Pl.'s Resp. in Opp'n to Def.'s Mot. for S.J. at 16-17.

Next, Defendant contends Plaintiff must show it failed to accommodate his alleged disability.  Defendant argues there was no reasonable accommodation available for Plaintiff.  Def.'s Mem. in Support of Mot. for S.J. at 11.  According to Defendant, "from March 2003 through May 2003, there were no vacant supervisory or administrative positions to which Plaintiff could have been reassigned."  *Id.*  Defendant further argues that, even if the positions of supervisory or office assistant were available for Plaintiff, he did not possess the requisite skills for either position.  Defendant misses Plaintiff's point.  Plaintiff did not request a reassignment to another position.  Plaintiff contends Defendant was already accommodating him prior to his cancer diagnosis but refused to accommodate him once it found out Plaintiff had cancer.  Plaintiff also contends Defendant's reason for terminating him is pretextual.  Because there is a genuine issue of material fact as to whether Defendant accommodated Plaintiff in the jobs of raker and screed operator months prior to Plaintiff's cancer diagnosis then terminated Plaintiff once it knew Plaintiff had cancer, summary judgment is precluded.  Moreover, Plaintiff has presented sufficient evidence to show a genuine issue of material fact as to whether Defendant's reason for his discharge, that after February 14, 2003 he never returned to work, is pretextual.

For the foregoing reasons, Defendant's motion for summary judgment is denied in its entirety.

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**